**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.1:17-CV-205

JERRY PARKISON and ALEXANDREA SHELLY,
    Plaintiffs

v.

POLARIS INDUSTRIES, Inc.,
    Defendant

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiffs Jerry Parkison and Alexandrea Shelly, by and through their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., hereby state the following claims against Defendant Polaris Industries, Inc., and allege and aver as follows:

## I. PARTIES

1. Plaintiff Jerry Parkison is an individual residing at 1747 W. Frost Place, Littleton, Colorado 80128.

2. Plaintiff Alexandrea Shelly is an individual residing at 453 Sherilynn Circle, Firestone, Colorado 80520.

3. Defendant Polaris Industries, Inc. is a foreign corporation incorporated in Minnesota with its corporate headquarters located at 2100 Highway 55, Medina, Minnesota 55340. Its registered agent, CT Corporation System, Inc., is located at 100 S. 5th Ste. #1075, Minneapolis, MN 55402.

## II. JURISDICTION AND VENUE

4. Plaintiffs incorporate each and every allegation set forth above in their entirety as if set forth herein.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. As described herein, the amount in controversy exceeds the sum of $75,000 for each Plaintiff, and is a controversy between citizens of different states.

6. This Court has personal jurisdiction pursuant to F.R.C.P. 4(k) and C.R.S. § 13-1-124. The Court has personal jurisdiction over Defendant by virtue of Defendant's operations

1

and presence in Colorado, by its transacting business in or directed at Colorado, and/or by otherwise purposefully availing itself of the benefits and privileges of Colorado law by regular, continuous and systematic contacts with Colorado, as stated herein.

7. This Court is the proper venue pursuant to 28 USC § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the judicial district of the United States Court for the District of Colorado.

### III. STATEMENT OF FACTS

8. Plaintiffs incorporate and reallege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

9. At all times relevant, Defendant Polaris Industries, Inc. was the manufacturer of the 2009 Polaris Razor RZR, VIN: 4XAVH76A09D812029 ("Vehicle") that is the subject of this complaint.

10. This action is a "product liability action" against the Defendant on account of personal injuries sustained by Plaintiffs as defined by and governed by C.R.S. § 13-21-401 *et seq.* and Defendant is the "manufacturer" and seller of the Vehicle as defined by C.R.S. § 13-21-401 *et seq*.

11. Defendant is now, and at all times mentioned in this complaint was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of off-road vehicles, including the Vehicle in question.

12. Defendant maintains a network of approximately twenty authorized dealers of its products in Colorado.

13. Defendant targets the Colorado market for the sale of its products, including the Vehicle in question.

14. Defendant purposefully avails itself of the privilege of conducting activities within Colorado, given the demand of Colorado residents for Defendant's off-road vehicles.

15. Defendant actively markets and sells its products to Colorado residents through promotional events and gatherings within the state of Colorado.

16. Upon information and belief, the Vehicle was originally sold as new by Defendant through a Colorado authorized dealer to Colorado resident Freddie Bishop, in Colorado, in 2009.

17. When the Vehicle was manufactured by Defendant, Defendant equipped the Vehicle with a factory-installed OEM roll cage ("Roll Cage").

18. When the Vehicle was originally sold as new by Defendant, it was equipped with the Roll Cage.

19. In approximately 2010, Plaintiff Jerry Parkison ("Parkison") purchased the Vehicle from the Manheim auto auction in Littleton, Colorado.

20. When Parkison purchased the Vehicle, it was still equipped with the Roll Cage.

21. Upon information and belief, the Roll Cage had never been removed, repaired, disassembled, or modified by anyone before Parkison purchased the Vehicle.

22. In order to increase the safety of the Vehicle, Parkison installed new 4-point seatbelts, seats, and doors on the Vehicle.

23. From the date that Parkison purchased the Vehicle, up through and including July 2014, he did not remove, repair, or disassemble the Roll Cage. The only modification made by Parkison to the Roll cage was to remove the original seatbelt mounts when he upgraded the seatbelts.

24. From the date that Parkison purchased the Vehicle, up through and including July 2014, the Vehicle was not involved in any collision that impacted the Roll Cage.

25. From the date that Parkison purchased the Vehicle, he expected that the Roll Cage would provide adequate protection to occupants of the Vehicle in the event of a roll-over.

26. Over the 4th of July weekend of 2014, Parkison took the Vehicle to St. Anthony Sand Dunes in Idaho for a family vacation.

27. On July 5, 2014, Parkison drove the Vehicle into the sand dunes, accompanied by his granddaughter, Plaintiff Alexandrea Shelly ("Shelly").

28. At all times relevant, Parkison was driving the Vehicle, and Shelly occupied the passenger seat.

29. As a passenger in the Vehicle, Shelly expected that the Roll Cage would provide adequate protection to occupants of the Vehicle in the event of a roll-over.

30. At all times relevant, both Parkison and Shelly were wearing full protective body gear, including helmets and googles.

31. At approximately Noon, Parkison began driving the Vehicle back toward the campground.

32. The weather was clear and sunny, and the sun was high in the sky.

33. Parkison was driving the Vehicle at a speed of approximately 10-15 mph, and was traveling along a well-establish path to return to the campsite.

34. At approximately GPS coordinates N43.96236 and W111.95220, Parkison drove the Vehicle up a gradual incline, and could not see the upcoming edge of crest of a razorback dune because of the angle of the sun prevented any shadows.

35. Parkison drove the Vehicle over the crest of the dune, and the front of vehicle pitched forward, down the backside of the dune.

36. At the bottom of the approximately 20 foot high dune, the front of the Vehicle impacted a level surface in the sand, causing the Vehicle to tip forward.

37. The Vehicle tipped entirely over and the top of the Roll Cage impacted the level surface of the sand.

38. Upon impact with the sand, the Roll Cage collapsed approximately eleven (11) inches into the occupant compartment ("Incident"), striking both Parkison and Shelly on the top of their helmets.

39. The Vehicle continued to roll over, making only one complete rotation, coming to rest upright on its tires.

40. At the time of the Incident. Parkison was operating the Vehicle in a manner and for a purpose that was intended by Defendant.

41. At the time of the Incident, Parkison was operating the Vehicle in a manner that was reasonably expected by Defendant.

42. As a result of the Incident, Parkison and Shelly were severely injured and required emergency medical treatment.

43. As a result of their injuries, Parkison and Shelly sought medical care, including but not limited to surgeries, physical therapy, and pain medication.

44. As the manufacturer of the vehicle, Defendant owes a duty to design and manufacture products that are reasonably safe, including the Vehicle.

45. As the manufacturer of the vehicle, Defendant owes a duty not to design and manufacture products that are more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, including the Vehicle.

46. As the manufacturer of the vehicle, Defendant owes a duty not to design and manufacture the Vehicle equipped with a Roll Cage that collapses in low speed roll-events like the Incident.

47. As the manufacturer of the vehicle, Defendant owes a duty to warn that the Vehicle, as equipped with the Roll Cage, would not withstand a low speed roll-event like the Incident.

48. The Vehicle, as designed and manufactured by Defendant, was defective and unreasonably dangerous.

49. The Vehicle was unreasonably dangerous because the defect in its design created a risk of harm to persons which would not ordinarily be expected.

50. The Vehicle was unreasonably dangerous because the defect in its design created a risk of harm to persons which was not outweighed by the benefits to be achieved from such design.

51. Defendant failed to provide adequate warnings about the Vehicle, rendering it defective and unreasonably dangerous.

52. Defendant is strictly liable for its failure to design and manufacture a reasonably safe Vehicle, and its failure to provide adequate warnings about the Vehicle.

53. As a direct and proximate result of Defendant's actions and inactions, the Plaintiffs sustained severe injuries, requiring medical treatment.

54. As a direct and proximate result of Defendant's action and inactions, the Plaintiffs have suffered and will continue to suffer economic losses and damages including, but not limited to, past and future medical and rehabilitation expenses and out-of-pocket expenses, and past and future lost income and loss of earning capacity. Each of the Plaintiffs' losses and damages in this category exceed $100,000.00.

55. As a direct and proximate result of this Incident, the Plaintiffs have and will continue to suffer in the future non-economic damages including, but not limited to, pain and suffering; loss of enjoyment of life; inconvenience; and emotional distress. Each of the Plaintiffs' losses and damages in this category exceed $100,000.00.

56. As a direct and proximate result of this Incident, the Plaintiffs have and will continue to suffer physical impairment and permanent disfigurement.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Strict Products Liability

57. Plaintiffs incorporate and reallege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

58. Defendant designed, manufactured, assembled, inspected, tested, distributed, sold, and failed to warn about the subject Vehicle so as to render it defective, unreasonably dangerous, and unsafe for its intended use.

5

59. Defendant's design, manufacturing, assembling, inspection, distribution, sale, and failure to warn about the Vehicle caused the defective, unreasonably dangerous, and unsafe condition as alleged herein.

60. When the Plaintiffs sustained the injuries alleged above, Defendant's product was in a defective condition unreasonably dangerous to a user or consumer in that it was unfit, unsafe, not usable for the purpose for which it was intended, and dangerous and defective in nature, design, and materials.

61. Such condition was not observable by Plaintiffs who, lacking the technical knowledge and skill required to examine or determine said defects described above, relied on the duty of Defendant to deliver the product at the time of sale in a condition fit for use for the purpose intended and in a safe and operable condition.

62. The Vehicle reached the Plaintiffs without substantial change in the condition in which it was sold.

63. The breach of such duty by Defendant, and such defective condition of its product, was a proximate cause of injuries so sustained by Plaintiffs.

64. Because the Vehicle was not reasonably safe, the Defendant is strictly liable to the Plaintiffs for the harm proximately caused by the Defendant's defective and dangerous product.

## SECOND CLAIM FOR RELIEF
**Negligence**

65. Plaintiffs incorporate and reallege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

66. Defendant owed a duty to design and manufacture products that are reasonably safe, including the Vehicle.

67. Defendant owed a duty to inspect, market and sell products that are reasonably safe, including the Vehicle.

68. Defendant owed a duty to warn that the Vehicle, as equipped with the Roll Cage, would not withstand a low speed roll-event like the Incident.

69. Defendant breached its duties, having negligently designed and/or manufactured and/or inspected and/or marketed and/or sold the Vehicle and negligently placed it in the channels of trade when it knew or with reasonable care should have known the Vehicle to be dangerous and defective in nature, design and materials, and in a dangerous and/or defective condition, in a manner in which Defendant should reasonably have foreseen would come into use by persons such as the Plaintiffs who are ignorant of the dangerous and defective condition.  Defendant failed to use reasonable care to prevent such injury to such persons including the Plaintiffs.

6

70. Defendant breached its duties, having failed to warn Plaintiffs and other consumers of the potential for sudden and catastrophic failure of the Roll Cage before and after offering its product for sale.

71. The breach of such duties by Defendant, and such defective condition of its product, was the proximate cause of injuries so sustained by Plaintiffs.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendant and for relief as follows:

1. Economic damages, including but not limited to, past and future medical expenses and out of pocket expenses, lost income, and loss of earning capacity;

2. Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, mental anguish, and emotional distress;

3. Damages for permanent impairment and disfigurement;

4. All other compensatory damages caused by Defendant's actions, to be proven at trial;

5. Pre-judgment and post-judgment interest as provided for by law;

6. Attorney fees, costs and expenses of this action as provided for by law; and

7. For such other and further relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 23rd day of January, 2017.

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*(Original signature on file at Burg Simpson Eldredge Hersh & Jardine, P.C.)*

*/s/ Stephen J. Burg*
Stephen J. Burg, Reg. No. 39789
David J. Crough, Reg. No. 47528
40 Inverness Drive East
Englewood, CO 80112

7

(303) 792-5595  
(303) 708-0527  
sburg@burgsimpson.com  
dcrough@burgsimpson.com  
*Attorneys for Plaintiffs*